UNITED STATE BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------

IN RE

       CIARA MINOR,                                   09-12095 B

                       Debtor        <u>REVISED DECISION & ORDER</u>

--------------------------------------------------------------------

                    Bulan & Chiari, Horwitz & Ilecki, LLP
                    Harold P. Bulan, Esq., of counsel
                    14 Lafayette Square
                    Suite 1440
                    Buffalo, New York 14203
                    Attorneys for the Chapter 7 Trustee

                    Bergen & Schiffmacher, LLP
                    Joseph R. Bergen, Esq., of counsel
                    651 Delaware Avenue
                    Buffalo, New York 14202
                    Special Counsel for the Chapter 7 Trustee

                    Dennis Gaughan, Esq.
                    6161 S. Park Avenue
                    Hamburg, New York 14075
                    Attorney for the Debtor

Bucki, Chief U.S.B.J.

     The Chapter 7 trustee seeks authorization to settle claims to the proceeds of personal injury litigation. In particular, he proposes to pay sums purportedly due under a pre-settlement finance agreement and to surcharge the debtor's exemption for a portion of that payment. The instant motion presents issues regarding the enforceability of the finance agreement, both under state law and in the context of these bankruptcy proceedings.

     Ciara Minor suffered injuries as a result of an automobile accident that occurred on September 29, 2006. Consequently, she commenced litigation in state court to recover compensation for her injuries. While this action was pending, she entered into

four separate agreements with an entity called Pre-Settlement Finance, LLC (hereinafter referred to as "PSF"). Pursuant to these agreements, PSF advanced to Ms. Minor an initial sum of $12,500 in November 2007; the further sum of $2,500 in December 2007; the further sum of $3,000 in August 2008; and a final sum of $600 in December 2008. In consideration of these advances, Minor agreed that from the proceeds of her outstanding litigation, PSF would receive the total of its advances, together with processing fees of $875 and together with interest calculated at an annual rate of 42.5 percent. The parties agreed, however, that Ciara Minor would have no personal obligation to pay any sum other than from what she might recover from her personal injury action.

Ciara Minor filed a petition for relief under Chapter 7 of the Bankruptcy Code on May 8, 2009, a date subsequent to her receipt of the four advances from PSF. In schedules filed with her petition, the debtor disclosed the existence of her personal injury cause of action. Listing it as an asset of the bankruptcy estate, Minor reported that her cause of action was subject to the lien of PSF. Further, as allowed under the then applicable provisions of New York Debtor and Creditor Law §282(3), she asserted an exemption with respect to the first $7,500 of any recovery on account of the personal injury. On June 26, 2009, the trustee filed a timely objection to this claim of exemption. After a hearing on the trustee's motion, the court issued an order holding the trustee's objection in abeyance, until the time of a resolution of the personal injury litigation.

On September 10, 2009, this court granted the trustee's motion to authorize the employment of special counsel to continue the prosecution of the debtor's personal injury litigation. That counsel then negotiated a settlement of the outstanding cause

of action. Meanwhile, the trustee undertook negotiations to resolve the interests of PSF. Accordingly, the trustee moved for authority to settle the personal injury cause of action for $55,000; to authorize payment of the fees and disbursements of the estate's special counsel; and to authorize payment of $23,808 to PSF in full satisfaction of any secured claim. Further, the trustee renewed his objection to the debtor's claim of an exemption in any portion of the personal injury recovery. After several hearings on this matter, the court approved the gross amount of the personal injury settlement and authorized payment of the fees and disbursements of special litigation counsel. The court reserved decision, however, on the request to approve the settlement with PSF and to disallow the debtor's exemption.

In support of his request to approve the settlement with PSF, the trustee reports that PSF advanced the sum of $18,600 to the debtor, and that under terms of the funding agreements, the outstanding obligation with interest now totals in excess of $32,000. Thus, the trustee asserts that the proposed settlement of $23,808 represents a meaningful compromise of PSF's claim. In negotiating the settlement amount, PSF represented that it has a capital cost of approximately 15 percent,[1] and that the settlement will essentially allow repayment of principal plus interest at the rate of 16 percent, but without any further reimbursement of legal expenses that PSF would otherwise have been entitled to recover. Further, the trustee opined that litigation with PSF "would involve more actual costs to the estate than would be realized."

The court has received no opposition to the trustee's request to authorize payment to PSF. Nonetheless, to secure the approval of his motion, the trustee must still demonstrate that the proposed settlement represents a reasonable exercise of his

---

[1] This representation may by curious, but the trustee gives no explanation of its relevance to the issues that the court must decide.

sound discretion. In this regard, at the initial hearing on this matter, the court asked whether the trustee had considered the implications of the New York prohibitions against champerty and usury, as well as issues regarding the enforcement of unconscionable contracts. In partial response to these concerns, counsel for PSF has submitted a ten page letter asserting the legality and enforceablility of the underlying agreements between PSF and the debtor. Counsel wrote that PSF would not voluntarily submit to the jurisdiction of the bankruptcy court but wished merely to offer its position regarding the validity of its underlying claim.[2] Without now deciding the ultimate scope of this court's jurisdiction with respect to PSF, I have carefully considered the arguments of counsel for PSF and find that they fail to persuade the court that the proposed settlement is reasonable and in the best interests of the bankruptcy estate.

## Discussion

The trustee's motion requires that the court determine the reasonableness of a proposed settlement. Generally, the court will approve settlements that fairly resolve issues that are the subject of a good faith dispute. But the mere assertion of a claim or right does not necessarily justify a distribution of estate assets. Although the court does not aim to substitute its judgment for that of the trustee, the trustee must nonetheless demonstrate that the controversy presents sufficient risk to justify the proposed payout. To evaluate such risk, we must examine the merits of PSF's claim to a lien on proceeds from the debtor's personal injury litigation.

The present motion seeks to approve a settlement within the context of a bankruptcy proceeding. Consequently, special bankruptcy considerations will apply.

---

[2]The court does not necessarily condone the approach of counsel, but prefers at this time to focus its attention on the merits of the trustee's outstanding motion.

To better explain the application of these factors, however, this opinion will first consider whether PSF could enforce its agreement outside bankruptcy as against the debtor. Under New York law, the question of enforceability involves issues of assignability, usury, and unconscionability.

Under the common law, an injured party could not assign a personal injury cause of action. *Juba v. General Builders Supply Corp.*, 7 N.Y.2d 48, 53 (1959). The State of New York has codified this rule in section 13-101 of the General Obligations Law, which states in relevant part that "[a]ny claim or demand can be transferred, except in one of the following cases: 1. Where it is to recover damages for a personal injury. . . ." However, New York courts have recognized a distinction between the assignment of a claim and the assignment of the proceeds of any recovery on that claim. "Although a cause of action for personal injuries is not assignable, an assignment of the proceeds to be recovered is enforceable *as an equitable assignment.*" 6A N.Y. JUR. 2D *Assignments* § 22 (2009)(emphasis added).

With regard to the effort of PSF to establish a binding claim against the debtor, a second pitfall arises from the law of usury. General Obligations Law §5-501(2) states the general rule, that "[n]o person or corporation shall, directly or indirectly, charge, take or receive any money, goods or things in action as interest at a rate exceeding" the prescribed rate. That rate is now set at 16 percent per annum. N.Y. BANKING LAW §14-a (McKinney Supp. 2007). Pursuant to General Obligations law §5-511(1), a usurious contract is void, so that the lender is generally precluded from recovery of either principal or interest. The consequences of usury are severe, but exceptions to its application are numerous. New York courts have held that usury limitations apply only to loans and not to investments. *See Orvis v. Curtiss*, 157 N.Y.

657, 661(1899). Further, usury might not arise where the right to collect is based on a contingency that the debtor controls. *See Sumner v. People*, 29 N.Y. 337 (1864).

Arguably, the agreements between PSF and Ciara Minor have been worded to avoid legal limitations with regard to assignment and usury. Except for references to amounts and dates, the four contracts are essentially identical. Each is characterized not as a loan agreement, but as "Plaintiff's Agreement to Pay Proceeds Contingent on Successful Settlement, Judgment or Verdict and Receipt of Proceeds," and as an "Agreement to Assign Proceeds." In each agreement, paragraph 3(a) declares that "payment shall be and is by this Agreement an Assignment of Proceeds of Plaintiff's settlement, judgment or verdict proceeds." Asserting the contingent nature of repayment, paragraph 2 states that "PSF is to be paid only if such proceeds are received through settlement, judgment or verdict." As if in contemplation of a potential bankruptcy, the following language of paragraph 1(g) attempts to preserve the treatment and characterization of the agreement:

> "In the event Plaintiff commences, or has commenced against him/her, any case, or other proceeding, pursuant to any bankruptcy, insolvency, [or] similar law prior to my receipt of the full amount due PSF pursuant to this Agreement, Plaintiff shall cause the said amount due PSF to be described as a partial ownership of Plaintiff's asset (potential proceeds from the Litigation) in any oral or written communications, including but not limited to, any schedule or other document, made or filed in connection with any such case or proceeding. In no event shall Plaintiff permit the amount due PSF to be described as a debt or obligation to PSF in any such communication, document or filing."

In its written submission, counsel for PSF argues that Ciara Minor effected a valid pre-petition assignment of litigation proceeds. Asserting that it holds the status

of an investor, PSF denies the existence of a loan that would be subject to any usury limitations. It further contends that even if a loan were deemed to exist, usury limitations would not apply in the present instance where repayment is contingent on a recovery from the personal injury litigation. Finally, PSF believes that it has acquired an interest in proceeds that are no longer property of the estate and therefore not subject to administration by the bankruptcy trustee.

Even outside bankruptcy, the validity of PSF's legal argument is highly suspect for at least three reasons. First, the underlying agreements are at best ambiguous on the issue of whether they constitute an assignment or a loan. Suggesting a loan, paragraph 2 of each agreement states that "Plaintiff shall repay PSF from the proceeds of the settlement, judgment and/or verdict in his/her case." As in a typical loan agreement, repayment terms are defined to include the principal amount of the advance plus fees and interest at a precisely calculated rate. Second, in determining the usurious character of an agreement, New York courts have looked beyond form to consider the underlying essence of the transaction. For example, in *Echeverria v. Estate of Lindner*, No. 018666/2002, 2005 WL 1083704, at *8 (N.Y. Sup. Ct., March 2, 2005), the court disregarded both the formality of a purported assignment of litigation proceeds and contractual language which allowed recovery only from the proceeds of litigation. Finding "a very low probability that judgment would not be in favor of the plaintiff," the court concluded that the funding agreement constituted a loan that was subject to the defense of usury. Similarly, in the present instance, the probability of success in the personal injury action may suggest not the uncertainty of an investment, but the reliability of recovery on a fully secured loan. On that loan, however, PSF would recover interest at a clearly usurious rate. Third, the

arrangement between PSF and Ciara Minor suggests the potential defense of unconscionability.

On their face, the pre-settlement loan agreements are troublesome and perhaps even predatory. Executed at a time when federal judgments accrued interest at a rate of less than one percent per annum, the loan agreements specify an interest rate of 2.99 percent per month. The documents acknowledge that with compounding, the rate of return for PSF would total 42.5 percent annually. Meanwhile, Ciara Minor is an individual with limited income and few resources. Her bankruptcy schedules show an average monthly income of less than $1,600. Except for the possibility of a recovery on the personal injury cause of action, she had no non-exempt assets on the day of bankruptcy filing. An equitable doctrine, unconscionability "is primarily a means with which to protect the commercially illiterate consumer beguiled into a grossly unfair bargain by a deceptive vendor or finance company." 22 N.Y. JUR. 2D *Contracts* § 150 (2008). On this standard, the present facts raise at least a serious concern for the enforceability of the four agreements between PSF and the debtor.

The trustee asserts that he has negotiated a settlement that fairly accommodates both sides of the legal argument regarding the enforceability of the funding agreements. If the proposed settlement involved only a dispute under state law with respect to the rights of PSF and Ciara Minor, then perhaps the parties might make a colorable argument that this court should defer to the trustee's recommendation. However, the present dispute arises within bankruptcy and implicates not so much the rights of Ciara Minor, but the interests of third-party creditors. Although state law will determine the extent and nature of liens, *Thompson v. Fairbanks*, 196 U.S. 516 (1905), the law of New York recognizes the rights of

creditors on whose behalf the trustee serves. Even if enforceable against the assignor, the equitable lien of PSF will lose priority as against the interests of a bankruptcy trustee.

Both at common law and pursuant to General Obligations Law §13-101, an injured party may not assign a claim or demand to recover damages resulting from a personal injury. Consequently, PSF could acquire no legal interest in any cause of action belonging to Ciara Minor. Rather, under New York law, the assigning documents establish only an equitable lien. The New York Court of Appeals explained the rationale for this status in *Williams v. Ingersoll*, 89 N.Y. 508, 519 (1882):

> "At law, there could be no assignment of the damages, because they were for a personal tort, and the assignment could not take effect upon the award, because that had no existence at the time. But it is otherwise in equity. . . . Every assignment of a chose in action is merely an executory contract which equity considers as executed, and which the law following equity regards as conferring certain rights which the assignor is bound to respect. If a contract to assign be good in itself and *not inconsistent with public policy*, it will take effect as an equitable assignment." (emphasis added).

Imposing an interest rate more than two times the limit of usury, Minor's purported assignment to PSF seems inconsistent with public policy. But even if we assume consistency, PSF would have acquired only an equitable lien. Although any such equitable lien might be enforceable against Ciara Minor, PSF has acquired no lien that it could enforce against a trustee in bankruptcy.

New York law will not enforce an equitable lien against anyone other than a contracting party.[3] For example, in *Zartman v. First Nat. Bank*, 189 N.Y. 267 (1907),

---

[3] Much of the law regarding equitable liens derives from disputes over rights to after-acquired property. Under common law, as noted by the court in *The Rochester Distilling Company v. Rasey*, 142 N.Y 570, 577 (1894), "a mortgage cannot be given future effect as a lien upon personal property, which, at the time of its delivery, was not in existence, actually

the Court of Appeals affirmed a lower court decision directing the turnover of property to a bankruptcy trustee. Rejecting the respondent's competing claim of an equitable mortgage in the same assets, the court recited the controlling standard:

> "It is only when the rights of third parties will not be prejudiced that equity, treating as done that which was agreed to be done, will turn a contract to give a mortgage on property to be acquired into an equitable mortgage on such property as fast as it is acquired and enforce the same accordingly against the mortgagor, his representatives and assigns. In other words, the agreement and intention of the parties to a mortgage upon property not yet in existence will be given effect by a court of equity so far as practicable, provided no interest is affected except that of mortgagor and mortgagee, who entered into the stipulation, but equity closes its doors and refuses relief if the interests of creditors are involved."

189 N.Y. at 272. Further, the court concluded that "[t]he plaintiff, as trustee in bankruptcy of the mortgagor, has the same rights as a creditor armed with an attachment or execution." 189 N.Y. at 274. By intervening on behalf of general creditors, the trustee precluded the use of equity to create a lien with priority over the interests of the bankruptcy estate.

In *Titusville Iron Co. v. City of New York*, 207 N.Y. 203 (1912), a bankruptcy trustee also prevailed against a creditor claiming entitlement to an equitable lien. Again, the Court of Appeals reiterated the applicable law: "Mortgages or contracts pledging subsequently acquired property, though void at law, will nevertheless be enforced in equity as between mortgagor and mortgagee as agreements to give liens, and also as against purchasers with notice. But it seems settled law, at least in this

---

or potentially, when the rights of creditors have intervened." However, such an agreement might still be enforced as an equitable lien on property that the borrow may acquire. *Kribbs v. Alford*, 120 N.Y. 519 (1890). Today, under the Uniform Commercial Code, the proper perfection of a security interest may create an enforceable lien in after-acquired property, without regard to any entitlement to an equitable lien under common law. N.Y.U.C.C. §9-204 (McKinney 2002). Article 9 of the Uniform Commercial Code does not apply, however, to the assignment of a personal injury claim. N.Y.U.C.C. §9-109(12) (McKinney 2002). Accordingly, precedents that predate the adoption of the Uniform Commercial Code will continue to speak to the scope and effect of equitable liens generally.

state, that they will not be enforced as against creditors." 207 N.Y. at 209 (citations omitted). A similar outcome occurs with respect to assignments. Thus, in *Matter of City of New York v. Bedford Bar & Grill*, 2 N.Y.2d 429, 432-33 (1957), the court observed that "as between a judgment creditor's lien and the equitable lien of an assignee of property subsequently to be acquired, the latter, while his rights will be enforced in equity as against his assignor, has no right at all as against the former." *Accord, F. & M. Schaefer Brewing Company v. Amsterdam Tavern, Inc.*, 171 Misc. 352, 352 (N.Y. Sup. 1939).

The facts of the present dispute are closely analogous to those that the Appellate Division considered in *Matter of Cordaro v. Cordaro*, 18 A.D.2d 774 (1962), *aff'd without opinion*, 13 N.Y.2d 697 (1963). In that case, a judgment creditor and a purported assignee asserted competing claims to the proceeds of a personal injury settlement. "The lien of the judgment having been perfected prior to the creation of the fund it is superior to the [assignee's] inchoate equitable lien and should be paid first." 18 A.D.2d at 775. Similarly here, because PSF held only an equitable lien at the time of bankruptcy filing, its rights are subservient to those that the trustee must now enforce on behalf of creditors generally.

Prior to his election to the New York Court of Appeals, the Honorable Charles D. Breitel authored a decision which granted priority to the assignee of an interest in a lawsuit to recover corporate stock and money. *Stathos v. Murphy*, 26 A.D.2d 503 (N.Y. App. Div. 1966). The court cautioned, however, that "[i]n all this analysis, the nonassignable personal tort claim must be distinguished from other kinds of intangible property assigned." *Id.* at 504. Indeed, by reason of the prohibitions in General

Obligations Law §13-101, a claim or demand to recover damages for personal injury is not assignable. In the present case, therefore, PSF can assert only an equitable lien that would be subject to all of the limitations that equity would impose upon such an encumbrance.

Section 541(a)(1) of the Bankruptcy Code states generally that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." This broad inclusion of property is subject to the limitations of 11 U.S.C. §541(d), which states in relevant part as follows: "Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate . . . only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." If PSF held rights in equity without restriction, then arguably the assignment might place the tort recovery into the exclusions of section 541(d). But here, the extent of PSF's equitable interest is itself limited, in that it does not reach to impair the rights of creditors or the trustee. At the time of her bankruptcy filing, Ciara Minor had not yet obtained a settlement of her personal injury cause of action. Consequently, by reason of the purported assignments, PSF held no more than an equitable interest in any ultimate recovery. Under New York law, however, that equitable lien could take no precedence over the interests of creditors and of their representative trustee in bankruptcy. Thus, the bankruptcy estate will include the debtor's non-assignable legal interest in her personal injury cause of action, but without impairment by an assignment that is unenforceable under New York law as against the interests of the bankruptcy trustee.

Even if the limitations of section 541(d) were relevant, the non-exempt portion of Ciara Minor's tort recovery would become property of the bankruptcy estate by reason of 11 U.S.C. §544(a)(1).  Section 541(a) of the Bankruptcy Code defines property of the estate to include not only "all legal or equitable interests of the debtor," but also any interest that the trustee may recover under 11 U.S.C. §550.  Section 550 allows a trustee to recover transfers that are avoidable under section 544.  Subdivision (a)(1) of this later section gives to the trustee the rights of a creditor that obtains a judgment lien at the time of bankruptcy filing.  Inferior under New York law to the interests of a judgment creditor, the assignment rights of PSF must now succumb to the powers of the trustee in bankruptcy.

The trustee's motion seeks to approve a settlement that would repay all of the principal sums advanced by PSF, together with interest at the rate of 16 percent per annum for 21 months.   For the reasons stated herein, however, it appears that PSF possesses no lien that it can enforce against a bankruptcy trustee.  Until such time as someone presents a reasonably convincing argument to support the existence of an enforceable lien, the court is unable to find that the proposed settlement falls within the range of reasonableness.  Accordingly, the trustee's motion to approve the proposed settlement with PSF is denied.

Unfortunately, the present decision cannot finally resolve the underlying dispute regarding the extent of the estate's interest in the proceeds of the personal injury action.  Pursuant to Bankruptcy Rule 7001(2), an adversary proceeding is required "to determine the validity, priority, or extent of a lien or other interest in property."  Although the trustee has failed to justify his proposed settlement with PSF, the court

09-12095 B                                                                                                         14

for now can only deny the trustee's outstanding motion. Nonetheless, we welcome a full appearance on behalf of PSF, and will give due and appropriate consideration to all arguments that it might wish to advance in the context of any future adversary proceeding.

Finally, the trustee objects to the debtor's claim of an exemption under Debtor and Creditor Law § 282(3)(iii), to the extent of $7,500 of proceeds from the personal injury action. In the event that the debtor's conduct ultimately causes a diminution of estate assets, this court would consider the possible remedy of a surcharge against the debtor's exemption. At the present moment, however, the trustee has not incurred any loss by reason of PSF's purported lien. But until a resolution of all claims to litigation proceeds, we do not know whether the trustee might incur some future loss. Accordingly, the court cannot sustain the trustee's objection at this time, but will continue his objection until entry of an order that finally determines any competing claims to the proceeds of the personal injury action. Of course, PSF may wish to assert an equitable lien against the exempt assets of Ciara Minor. That possibility, however, provides no basis to challenge her exemption. To the extent that PSF seeks to compel a turnover of exempt assets, it may itself commence appropriate proceedings that will accord to the debtor a full opportunity to contest the validity of PSF's purported lien. Alternatively, in any adversary proceeding to determine the validity, priority or extent of PSF's lien, the trustee may wish to assert an interpleader cause of action to determine rights with respect to the exempt portion of the personal injury settlement.

By reason of the foregoing, the court denies that portion of the trustee's motion which seeks to settle the claim of Pre-Settlement Finance, LLC. Further, the motion

to disallow the debtor's claim of an exemption is continued until a final resolution of all interests in the personal injury settlement.

      So ordered.

Dated:      Buffalo, New York        /s/     CARL L. BUCKI
              February 24, 2011     Carl L. Bucki, Chief U.S.B.J., W.D.N.Y.